**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dirk N vanMerkestyn, | No. CV-25-00503-PHX-KML |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

Plaintiff Dirk N. vanMerkestyn filed this case after an administrative law judge ("ALJ") denied his application for Social Security Disability Insurance benefits. The case was referred to a magistrate judge who prepared a Report and Recommendation ("R&R") recommending the ALJ's decision be affirmed. (Doc. 23.) VanMerkestyn filed objections. (Doc. 23.) Upon de novo review of the portions of the R&R to which vanMerkestyn objects, the R&R is adopted.

The R&R provides a comprehensive recital of the background facts regarding vanMerkestyn's work and medical histories. Neither party objected to that background, and it is adopted. In brief, vanMerkestyn applied for disability benefits based on depression, social anxiety, and headaches. After a hearing where vanMerkestyn testified, the ALJ concluded "[t]he medical evidence of record does not sustain the claimant's allegations of disabling symptoms and limitations." (Doc. 14-3 at 27.) The R&R concluded the ALJ did not err. VanMerkestyn's objections to the R&R focus on two alleged errors by the ALJ. First, the ALJ did not provide adequate reasons for rejecting vanMerkestyn's

symptom testimony. Second, the ALJ did not provide adequate reasons for rejecting assessments from one of vanMerkestyn's providers, David Jones, LCSW.

### I.    Symptom Testimony

At the hearing before the ALJ, vanMerkestyn testified he was fired from his job in November 2020 "due to missing days, due to headaches and depression." (Doc. 14-3 at 45.) When asked for his "mental health diagnoses," vanMerkestyn stated he has "severe depression, and extreme anxiety." (Doc. 14-3 at 45.) VanMerkestyn has had depression for "as long as [he] can remember" and when he was younger, he had "a little more ability to rebound from situations" such that his depression was better. (Doc. 14-3 at 48.) But "over the years," his depression increased possibly due to him "losing [his] job over and over again." (Doc. 14-3 at 49.)

When asked about his headaches, vanMerkestyn stated the frequency has "been less since [he] stopped working, but at least a small one once a week." (Doc. 14-3 at 48.) VanMerkestyn treats his headaches through "[s]leep and/or taking some Advil." (Doc. 14-3 at 48.) He previously underwent extensive exams to identify the cause of his headaches, but they were inconclusive. (Doc. 14-3 at 53-54.)

When asked about his daily activities, vanMerkestyn described his ability to function is "like a rollercoaster." (Doc. 14-3 at 55.) He can do all of his own personal grooming, although he goes days without showering. (Doc. 14-3 at 50.) He spends most of his time lying in bed watching videos. (Doc. 14-3 at 49, 54.) But he also performs household chores including laundry, taking care of two dogs, performing minor maintenance on two vehicles, and preparing meals for himself and his mother multiple nights per week. (Doc. 14-3 at 50.) VanMerkestyn goes shopping with his mother or by himself, and sometimes visits his sister in Mesa. (Doc. 14-3 at 51.)

The ALJ concluded other evidence in the record established vanMerkestyn's limitations were not as severe as reflected in his testimony. The ALJ pointed to the exact evidence he believed conflicted with vanMerkestyn's testimony:

> While the record does reflect medical diagnoses of major depressive disorder and anxiety disorder requiring prescription

medication, the record also reflects the claimant is able to drive, do laundry, go shopping, and travel at times. The records indicate he is learning computer programming and is working on designs on a 3D printer. His mental status exams are consistently normal except for a depressed or irritable mood at times. Since the alleged onset date, the claimant reported he had started working on a new design upgrade for his computer, was able to sell a motorcycle, was able to help his niece with a door project, was working on a project for a printing machine with his friend and was "making progress on one of the cars". He reported having "increased energy and drive" with consistent counseling and medication.

(Doc. 14-3 at 23) (record citations omitted). VanMerkestyn argues this explanation was not sufficient. (Doc. 23 at 3.)

"[A]n ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear, and convincing reasons for doing so." *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022) (simplified). One permissible reason is evidence "the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* at 499 (simplified). Thus, the extent of a claimant's daily activities "may be grounds for discrediting the claimant's testimony to the extent they contradict claims of a totally debilitating impairment." *Id.* (simplified). Here, vanMerkestyn testified he spent most of his time in bed but other evidence in the record, including portions of his testimony, indicated he "was able to engage[] in a somewhat normal level of daily activity and interaction despite [his] limitations." *Id.*

The ALJ pointed to evidence that vanMerkestyn performs a wide variety of daily tasks (laundry, shopping, cooking), travels, studies, engages in hobbies, and sold a motorcycle. It is true that "[a] claimant does not need to be utterly incapacitated in order to be disabled." *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (simplified). But "[i]t is not the court's role to second-guess an ALJ's reasonable interpretation of a claimant's testimony." *Smartt*, 53 F.4th at 500. VanMerkestyn does not point to any evidence in the record undermining the extent to which he can engage in all of his claimed daily activities. *Cf. Revels v. Berryhill*, 874 F.3d 648, 668 (9th Cir. 2017) (ALJ erred by relying on daily activities when report stated claimant "could complete only some of the tasks in a single

day and regularly needed to take breaks"). And those daily activities were inconsistent with vanMerkestyn's professed need to spend all day in bed. The ALJ gave sufficient reasons for rejecting vanMerkestyn's testimony.

## II.    Treating Counselor

The second alleged error in the R&R involves the ALJ's rejection of assessments by David Jones, LCSW. VanMerkestyn saw Jones from June 2022 through September 2023. (Doc. 14-3 at 22.) Jones completed two assessments the ALJ discussed at length. The first assessment was from November 2022 and the other from September 2023. (Docs. 14-9 at 178-181; 15 at 68-71.) Both of those forms are mostly check-box forms identifying the extent of vanMerkestyn's limitations. Each form also includes brief "Additional Comments" from Jones. The additional comments to the November 2022 assessment state:

> Headaches are not fully treatable with medications. Significantly impairs his ability to function. Feelings of depression compound his problem. He stays home. Thoughts snowball. Worry of letting down workers.

(Doc. 14-9 at 181.) The additional comments to the September 2023 assessment state:

> Frequent debilitating headaches would interfere with required attendance. Rumination would significantly impair his ability to accomplish results. Missing work results in more depression. A great accumulation of symptoms.

(Doc. 15 at 71.)

The ALJ identified these assessments and concluded he was "not persuaded" because they were mostly check-box forms, the September 2023 assessment was completed by Jones and vanMerkestyn working together, and the assessments conflicted with Jones's own treatment notes, "the findings from the claimant's mental consultative examination," and vanMerkestyn's daily activities. (Doc. 14-3 at 26.) VanMerkestyn argues the ALJ did not provide sufficient explanation for rejecting the assessments but, reviewing the issue de novo, the ALJ's decision was adequately explained and supported.

VanMerkestyn argues the ALJ overlooked the additional comments Jones provided on each form, failed to differentiate between "unrelated normal cognitive examinations

- 4 -

findings" and the other findings of "vanMerkestyn's *mood disorders*, i.e. abnormal mood and/or affect[,]" and he "failed to explain how any [daily] activity was inconsistent with a specific assessed limitation." (Doc. 23 at 7.)

The parties agree Jones's assessments should be treated as medical opinions. (Docs. 16 at 19; 20 at 8.) The most important factors in evaluating the persuasiveness of medical opinions are "supportability" and "consistency." 20 C.F.R. § 404.1520c(a). Supportability is "the extent to which a medical source supports the medical opinion by explaining the relevant . . . objective medical evidence." *Woods v. Kijakazi*, 32 F.4th 785, 791-92 (9th Cir. 2022) (simplified). Consistency is "the extent to which a medical opinion is consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." *Id.* at 792 (simplified). The ALJ must "articulate . . . how persuasive" he finds "all of the medical opinions" from each medical source, 20 C.F.R. § 404.1520c(b), and "explain how [he] considered the supportability and consistency factors" in reaching these findings. 20 C.F.R. § 404.1520c(b)(2). The ALJ "cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792.

Beginning with supportability, Jones did not explain the basis for his ratings on each form. For example, in the November 2022 assessment Jones checked the box indicating vanMerkestyn had "severe limits" in seven areas, including the ability to "[m]aintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness." (Doc. 14-9 at 179.) The comments at the end of the form do not explain this limitation. In the September 2023 form, Jones checked the "none" box for that same area, indicating vanMerkestyn had "no evidence of limitation." (Doc. 15 at 68.) Yet the comments at the end of the September 2023 form are very similar to the comments on the previous form, with no explanation (or support in the record) for the dramatic change in ratings. The ALJ was justified in discounting Jones's assessments reflected "in a checkbox form with little to no explanation." *Kitchen v. Kijakazi*, 82 F.4th 732, 740-41 (9th Cir. 2023).

The ALJ also reasoned Jones's assessments were "not supported by his own

treatment notes." (Doc. 14-3 at 26.) The ALJ did not elaborate but, having reviewed the treatment notes, the assessments conflict with the notes at various points. *Cf. Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) ("In interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence.") (simplified). One assessment stated vanMerkestyn would have "severe" limitations in, among other areas, asking simple questions or requesting assistance. (Doc. 14-9 at 179.) There is no explanation in the treatment notes for such a limitation. Instead, the treatment notes reflect relatively sophisticated thinking, including the ability to assess past, present, and future situations. (Doc. 15 at 128.) The ALJ did not err in concluding the severe limitations in the assessments conflict with Jones's treatment notes.

In terms of the consistency requirement, the ALJ cited to the assessments conflicting with vanMerkestyn's "mental consultative examination" and his daily activities. According to vanMerkestyn, that was error because the consultative examiner addressed only vanMerkestyn's cognitive abilities but Jones addressed the "limitations from . . . mood disorders." (Doc. 23 at 7.) It is not entirely clear what this means in this context. Jones's assessments do not appear limited to vanMerkestyn's mood disorders. For example, they included ratings that vanMerkestyn had "moderate" or "moderately severe" limits in three areas involving the ability to "understand, remember, and apply information." (Doc. 14-9 at 178.) The consultative examiner provided ratings on very similar, if not identical, topics. (Doc. 149-9 at 73.) The ALJ was correct that Jones's assessments were inconsistent with the ratings from the consultative examiner.

The ALJ also reasoned Jones's assessments conflicted with vanMerkestyn's daily activities. Similar to the analysis regarding vanMerkestyn's testimony, the daily activities vanMerkestyn was able to pursue could be viewed as undercutting the severe restrictions reflected in Jones's assessments. To the extent vanMerkestyn believes his daily activities do not conflict with Jones's assessments, that was an issue for the ALJ, not this court. *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (ALJ must "determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record") (simplified).

- 6 -

The ALJ provided sufficient reasons for discounting vanMerkestyn's testimony and for discounting the Jones's assessments.

Accordingly,

**IT IS ORDERED** the Report and Recommendation (Doc. 22) is **ADOPTED** in part as set forth above.

**IT IS FURTHER ORDERED** affirming the decision of the ALJ. The Clerk of Court shall enter final judgment consistent with this Order and close this case.

Dated this 30th day of March, 2026.

**Honorable Krissa M. Lanham**
**United States District Judge**